**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MARK G. PRZEPIERSKI,**

   **Plaintiff,**

v.                                                      CASE NO. 8:07-CV-1574-T-EAJ

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

   **Defendant.**
_____/

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits ("DIB") under the Act.[1]  The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards.  See 42 U.S.C. § 405(g) (2006).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 10).

judgment as to the weight of the evidence for that of the Commissioner.  Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).[2]

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard.  See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required.  See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff alleges that he became disabled on February 15, 2003, due to human immunodeficiency virus ("HIV") infection, degenerative disk disease ("DDD"), myelopathy, peripheral neuropathy, and osteoarthritis.[3]  (T 16)  Plaintiff filed an application for a period of disability and DIB on May 12, 2004. (T 66-68)  His application was denied initially on October 7, 2004, and after reconsideration on January 21, 2005.  (T 14)  Following the administrative hearing on January 18, 2007, the ALJ denied benefits to Plaintiff in a decision dated February 9, 2007.  (T 11-28)  The Appeals Council denied Plaintiff's request for review on July 27, 2007, allowing the ALJ's decision to stand.  (T 3-5)  Plaintiff filed a timely petition for judicial review of the Commissioner's denial after exhausting all administrative remedies (Dkt. 1).  The Commissioner's decision is ripe for review under the Act.

---

[2]  Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981).

[3]  In his disability report, Plaintiff asserts that the following illnesses, injuries, or conditions limit his ability to work: HIV myelitis, myelopathy, peripheral neuropathy, numbness/dysthesia, neck pain, trouble grasping with hands, low back and leg pain, headaches, arthritis, ulcer, diarrhea.  (T 75)

At the time of the hearing, Plaintiff was 46 years old and had an eleventh grade education.[4] (T 419-20). His past work experience includes work as a furniture installer and assembler. (T 76-77)  To determine if Plaintiff is disabled, the ALJ performed a five-step evaluation. First, the ALJ found that Plaintiff had engaged in substantial gainful activity from April 4, 2003, until September 23, 2003 (after the onset of his alleged disability on February 15, 2003). (T 16)  Thus, the ALJ evaluated whether Plaintiff was disabled at any point after September 23, 2003. (Id.)  Second, after examining the medical evidence, the ALJ determined that Plaintiff has the following severe impairments resulting in "more than slight limitations": HIV infection, DDD, myelopathy, peripheral neuropathy, and osteoarthrisis.[5]  (T 16)  Although the ALJ considered these impairments severe, he determined that Plaintiff's impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)

After consideration of the entire record, in the third step the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the exertional demands of light work.[6] (T 17)  Specifically, the ALJ found that Plaintiff's RFC encompasses the following limitations:

> He can lift and carry 20# occasionally and 10# frequently. He can stand, [w]alk, sit 6 hours in a 8 hours [sic] work day and has no

---

[4] Plaintiff testified that he completed school through eleventh grade (T 419), but on his disability report he indicated that he completed one year of college. (T 83) The ALJ stated at the hearing that Plaintiff had an eleventh grade education. (T 420) However, this discrepancy is immaterial to the issues presented.

[5] As discussed below, there is an issue regarding whether Plaintiff's depression is a "severe" impairment. A "severe" impairment is one that "significantly limits [the] claimant's physical or mental ability to do basic work activities." Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir.1997) (citations omitted).

[6] Light work involves the lifting of no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Light work may require a good deal of walking or standing, or may involve sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

> limitations on his ability to push, pull with hand or foot controls. He has no postural manipulative, visual, communicative or environmental limitations. He has no medically documented mental impairment.

(Id.) Fourth, based upon Plaintiff's RFC, the ALJ found that Plaintiff cannot perform his past relevant work as a furniture installer and assembler. (T 27)

In the fifth step, the burden is on the Commissioner to show that there are a significant number of jobs in the national economy that Plaintiff can perform consistent with his work experience, age, education, and RFC. Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). The ALJ determined that Plaintiff was a "younger individual" according to 20 C.F.R. § 404.1563 on the alleged disability onset date. (T 28) Relying on the Medical Vocational Guidelines (the "grids"), found at 20 C.F.R. pt. 404, subpt. P, app. 2, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Id.) Accordingly, the ALJ found that Plaintiff is not disabled as defined by the Act.[7] (Id.) In reaching the conclusion that Plaintiff was not "disabled" at any time during the relevant time period, the ALJ held that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (T 23-28)

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II.

Plaintiff argues that the Commissioner erred by (1) rejecting the opinions of Plaintiff's two treating physicians without good cause; (2) failing to properly consider the combined effect

---

[7] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

4

of all of Plaintiff's impairments and symptoms; and (3) failing to call a Vocational Expert ("VE") after determining that Plaintiff could not perform his past work (Dkt. 13 at 18-21). The Commissioner maintains that the ALJ's decision is supported by substantial evidence and that the ALJ evaluated Plaintiff's claims under the proper legal standards (Dkt. 23).

**A.** Plaintiff contends that the ALJ improperly discounted the opinions of Plaintiff's treating neurologist, Karla M. Ledoux-Coton, M.D. ("Dr. Ledoux-Coton"), and treating HIV specialist, Dorece G. Norris, M.D. ("Dr. Norris") (Dkt. 13 at 18).

Generally, a treating physician's opinions are entitled to considerable weight unless there is good cause to reject those opinions.[8] Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). However, the opinion of a treating physician regarding a claimant's disability or inability to work may be discounted if it is conclusory, contrary to the evidence, or unsubstantiated by any objective medical evidence. Bloodsworth v. Heckler, 703 F.2d at 1240; accord Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Also, the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

Dr. Norris

The ALJ reviewed the treatment records and opinions of Dr. Norris and noted his treatment of Plaintiff on the following dates: on January 15, 2003, for complaints of worsening leg pain; on January 17, 2003, for complaints of increasing pain; on February 21, 2003, regarding diarrhea and flu-like symptoms; on March 20, 2003, to discuss Plaintiff's response to Flagyl; in August 2003, to discuss a cervical collar; on October 3 and 17, 2003, and April 6,

---

[8] A treating physician's opinion will be accorded controlling weight if it is supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2).

2004, to re-prescribe HIV medications; on November 2, 2003, to replace one of Plaintiff's HIV medications with Trizivir; on January 6, 2004, to discontinue Trizivir due to adverse side effects; on February 3, 2004, to add a trial of Neurontin and Ambien; on August 3, 2004, to continue Plaintiff's HIV medications and conduct an HIV examination; on February 16, 2005, to conduct blood tests; on July 13, 2005, September 7, 2005, December 14, 2005, and February 28, 2006, for HIV examinations; on April 25, 2006, for depression; and on June 16, 2006, to increase Plaintiff's Lexapro prescription.[9]  (T 19-27)

In accordance with his duty to weigh the evidence, the ALJ considered Dr. Norris's opinions as one of Plaintiff's treating physicians.  The ALJ pointed to several aspects of Dr. Norris's opinions which demonstrated good cause for rejecting them.  In particular, the ALJ described in detail Dr. Norris's June 19, 2006 opinion that Plaintiff has severe functional limitations and is incapable of performing even sedentary work.  (T 23, 341)  Dr. Norris further opined that Plaintiff was unable to engage in any and all physical or mental work, could only sit one hour per day and travel one hour per day, could not walk, stand, lift, bend, push, pull or crawl, and would never be able to return to work due to chronic pain, HIV, and myelopathy.  (T 341)  Dr. Norris determined that Plaintiff's physical impairments rendered him incapable of minimal (sedentary) activity and his mental impairments included an inability to engage in stressful situations or engage in interpersonal relations.  (Id.)

The ALJ found Dr. Norris's restrictions inconsistent with Plaintiff's testimony that he reads the paper, watches the news, cleans up after himself, goes to support group meetings, and limits his driving.  (T 25, 439)  The ALJ also noted that Dr. Norris's June 2006 assessment of Plaintiff's functional limitations is inconsistent with the physician's treatment records from July

---

[9] Medical records dated after May 17, 2004 (the date of Plaintiff's application) were submitted after the initial application.

13, 2005, December 14, 2005, February 28, 2006, August 3, 2006, and September 28, 2006, which show that Plaintiff's HIV was stable and his pain and myelopathy were controlled.[10]  (T 25, 350-58)  The ALJ further found Dr. Norris's assessment that Plaintiff could not walk at all during the day inconsistent with Dr. Ledoux-Coton's recommendation in January 2005 that Plaintiff "partake in daily exercise such as walking or yoga."  (T 25, 339)

The ALJ also discounted Dr. Norris's June 19, 2006 assessment that Plaintiff's HIV severely restricted his functioning; the ALJ found that the medical evidence established that Plaintiff had HIV, but that it did not meet or equal in severity the criteria of Section 14.08.[11]  (T 16) In January 2005, Plaintiff told Dr. Ledoux-Coton that his HIV remained stable.  (T 339)  In July 2005, December 2005, and February 2006, Dr. Norris stated that Plaintiff's HIV was under control.  (T 354-55, 358)  Thus, the ALJ concluded that the medical evidence of record did not indicate that Plaintiff's ability to perform substantial gainful activity was precluded by his HIV impairment.  (T 26)  The ALJ therefore gave little weight to Dr. Norris's June 19, 2006 opinion that Plaintiff was unable to engage in any work due to HIV.

The ALJ also emphasized that on September 28, 2006, Dr. Norris reported that Plaintiff's chronic pain was controlled and then on November 15, 2006, stated that Plaintiff's conditions remained the same.  (Id.)  Yet, in his June 2006 assessment (months earlier), Dr. Norris reported that Plaintiff's functioning ability was limited because of "chronic pain."  (T 341)  Finally, the ALJ found Dr. Norris's assessment of Plaintiff's mental health inconsistent with the physician's treatment notes, since Dr. Norris did not refer Plaintiff for mental health treatment.  (T 27)  Thus,

---

[10] The ALJ noted that Dr. Norris did not restrict Plaintiff's work-related activities due to his HIV (or the effects of medications) at any time prior to June 2006. (T 26)

[11] The ALJ stated that the medical records do not reflect that Plaintiff had "bacterial, fungal, viral, or other such infections, neoplasms, ulcerating lesions, hematological or neurological abnormalities, HIV wasting syndrome, cardiomyopathy, nephropathy, and/or marked or extreme functional limitations."  (T 16)

substantial evidence supports the ALJ's decision to discount Dr. Norris's opinion; Plaintiff has failed to show that the ALJ's consideration of Dr. Norris's opinion was error.

Dr. Ledoux-Coton

The ALJ also afforded little weight to the opinion of Plaintiff's treating neurologist, Dr. Ledoux-Coton. The ALJ reviewed the treatment records and opinions of Dr. Ledoux-Coton and noted Dr. Ledoux-Coton's treatment of Plaintiff on approximately eleven occasions over a three year period.[12]

The ALJ also discussed Dr. Ledoux-Coton's July 28, 2006 opinion that Plaintiff is severely limited to the extent that he cannot perform even sedentary work. (T 23, 345-46) The ALJ noted that there were no treatment records from Dr. Ledoux-Coton from October 2005 until July 2006, although the physician stated on the disability claim form that she had examined Plaintiff days earlier. (T 25) The ALJ determined that Dr. Ledoux-Coton's opinion that Plaintiff's myelopathy, peripheral neuropathy, neuropathic pain and migraine headaches restricted his employment activities indefinitely was inconsistent with the physician's own clinical findings as well as those of other treating and consulting physicians. (T 25, 346) In particular, the ALJ found Dr. Ledoux-Coton's opinion regarding Plaintiff's migraine headaches inconsistent with January 2005 treatment notes noting Plaintiff's statement that Imitrex controlled his headaches and that they occurred only occasionally. (T 25, 339)

---

[12] The ALJ reported that Dr. Ledoux-Coton treated Plaintiff on the following dates: on December 9, 2003, regarding a follow up; on January 12, 2004, to review Plaintiff's exam findings; on January 27, 2004, to conduct nerve conduction studies and electromyography; on February 2, 2004, to review test results; on April 26, 2004, regarding problems of urinary retention; on January 18, 2005, to discuss Plaintiff's breakthrough neuropathic pain; on April 13, 2005, to discuss Plaintiff's medication treatment; on April 20, 2005, to conduct upper extremity nerve conduction studies; on April 27, 2005, to discuss the studies; and on October 13, 2005, to discuss Plaintiff's attempt to discontinue his pain medications. (T 20-23)

8

Further, the ALJ found Dr. Ledoux-Coton's assessment that Plaintiff's neuropathic pain is disabling inconsistent with the physician's report of Plaintiff's statements in April 2005 that Neurontin helped his pain.  (T 25, 338)  Dr. Ledoux-Coton stated that Plaintiff cannot sit more than four hours per day, walk more than one hour per day, stand more than one hour per day, lift, push, pull, bend or climb.  The ALJ discredited this opinion as inconsistent with Plaintiff's testimony regarding his daily activities and Dr. Ledoux-Coton's own recommendation that Plaintiff increase his daily exercise.[13]  (T 26)  The ALJ also noted that Plaintiff told Dr. Ledoux-Coton in October 2005 that he had tried to discontinue all of his pain medication, despite prior complaints of chronic and severe pain.[14]  (T 25, 356)

In finding Dr. Ledoux-Coton's July 28, 2006 opinion inconsistent with the physician's own clinical findings, the ALJ also reviewed the conclusions of three consultative individuals, Patrick A. Ijewere, M.D. ("Dr. Ijewere"), Linda T. Inatsuka, Ph.D. ("Dr. Inatsuka"), and Richard B. Powell, M.D. ("Dr. Powell"), who each examined Plaintiff in 2004. (T 21, 211-20, 315-20) During those exams, Plaintiff denied that he suffered from depression or anxiety and his physical exam was normal. (T 21)

Substantial evidence supports the ALJ's decision to discount Dr. Ledoux-Coton's opinion and Plaintiff has failed to show that the ALJ's consideration of Dr. Ledoux-Coton's opinion was error.

---

[13] Plaintiff testified that he reads the paper, watches the news, cleans up after himself, does light chores, and goes to support group meetings.  (T 439)

[14] The ALJ observed that Plaintiff appeared to be in no acute distress at the hearing and was alert, oriented, responsive, coherent, and demonstrated good use of his arms and hands.  (T 26)  Based on this and other factors, the ALJ discredited Plaintiff's complaints of chronic and severe pain after sitting for short periods of time and after increased activity.  (Id.)

**B.** Plaintiff also contends that the ALJ did not consider the combined effect of all of his impairments, both severe and nonsevere, in determining his RFC (Dkt. 13 at 19). In particular, Plaintiff asserts that the ALJ ignored his migraine headaches and depression (Id. at 18-19).

In determining a claimant's RFC, the ALJ must consider each of the claimant's alleged impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1520(e), 404.1545(a); see Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987). In making his determination, the ALJ must consider the plaintiff's impairments both singly and in combination. 42 U.S.C. § 423(d)(2)(B); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). Where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling. Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984). In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. Id.

In determining Plaintiff's RFC at step four, the ALJ considered "all symptoms" and stated that Plaintiff alleged disability "primarily due to pain in his back, neck, head and extremities due to DDD, osteoarthritis, myelopathy, and headaches despite pain medication." (T 17, 23) Contrary to Plaintiff's assertion, this is not a case where "an ALJ fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1219 (11th Cir. 2001) (citation omitted). Further, the ALJ stated that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" (T 16); such finding complies with the requirement to consider the combined effect of a claimant's

impairments in determining whether he is disabled. Jones v. Bowen, 810 F.2d 1001, 1006 (11th Cir. 1986).

The ALJ appropriately evaluated Plaintiff's complaints regarding migraine headaches. For example, the ALJ noted that Plaintiff told Dr. Ledoux-Coton in January 2005 that he had only "occasional migraine headaches" and that "Imitrex had relieved them in the past." (T 25, 339) The ALJ stressed that in April 2005, Plaintiff reported to Dr. Ledoux-Coton that Imitrex was very effective for his occasional migraine. (T 25, 338) The ALJ also discussed how these statements conflicted with Plaintiff's testimony regarding his migraines. (T 25) At the hearing, Plaintiff testified that he has migraine headaches once every week, which can last for two days. (T 434) Also, Plaintiff testified that if he does not go to bed when he has a migraine, they can last three days and the Imitrex helps with the migraines only a "little bit." (Id.) However, the ALJ emphasized that Plaintiff never related this to his doctor. (T 25) Plaintiff's only mention of migraines to his physicians was to report that Imitrex relieved them. (Id.) Thus, the ALJ properly evaluated Plaintiff's migraine headaches both in terms of their severity and also their impact on residual functional capacity and there is substantial evidence to support these findings.

However, there are some inconsistencies in the record concerning Plaintiff's complaints of depression which are more appropriately discussed in section C below.

**C.** Finally, Plaintiff contends it was error for the ALJ to rely on the Medical Vocational Guidelines (the "grids") rather than the testimony of a VE in determining that Plaintiff could not perform his past work (Dkt. 13 at 19-21).

Once the ALJ found that Plaintiff's impairments prevented him from performing his past work as a furniture assembler/installer, the burden shifted to the Commissioner at step five of the evaluation process to prove that other jobs exist in the national economy that Plaintiff can

11

perform. See Wolfe v. Chater, 86 F.3d at 1077-78. This determination requires consideration of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 404.1566. Based on these considerations and the finding the Plaintiff had the residual functional capacity to perform a full range of light work (T 28), the ALJ applied the grids found at 20 C.F.R. Subpart P, App. 2 to determine that Plaintiff is "not disabled" and that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T 28)

An ALJ can utilize the grids to meet this burden if a claimant primarily suffers from exertional impairments[15] with no significant non-exertional limitations. See Allen v. Sullivan, 880 F.2d 1200, 1201-02 (11th Cir. 1989). When non-exertional impairments are alleged, the use of a VE is preferred. Foote v. Chater, 67 F.3d at 1559; MacGregor v. Bowen, 786 F.2d at 1054. Exclusive reliance on grids is not appropriate when a claimant has nonexertional impairments that significantly limit the claimant's basic work activities. See Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990); Allen v. Sullivan, 880 F.2d at 1202. The Eleventh Circuit has interpreted "significantly limit basic work skills" as limitations that prohibit a claimant from performing "a wide range" of work at a given work level. See Phillips v. Barnhart, 357 F.3d 1232, 1243 (11th Cir. 2004). Thus, when non-exertional impairments are alleged, the ALJ should make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level. Foote v. Chater, 67 F.3d at 1559; Syrock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985) (per curiam).

By definition, a "severe" impairment is one that "significantly limits [the] claimant's physical or mental ability to do basic work activities." Crayton v. Callahan, 120 F.3d 1217,

---

[15] An "exertional impairment" for social security disability purposes is an impairment which places limits on an individual's ability to meet job strength requirements. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

1219 (11th Cir.1997) (emphasis added); see also 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, common sense dictates that a "severe" non-exertional impairment precludes the use of the grids.

In the instant case, Plaintiff asserts that his pain, difficulty walking, side effects from medications, mental impairments, colon discomfort, HIV, migraine headaches, and/or Lhermitte's phenomenon (a tingling sensation radiating down his arms, legs, and spine) precluded the application of the grids (Dkt. 13 at 20-21). These are non-exertional impairments if credited by the ALJ;[16] Plaintiff alleges that the ALJ was required, once finding that Plaintiff could not perform his past work, to call a VE (Dkt. 13 at 21).[17]

By utilizing the grids in lieu of vocational expert testimony, the ALJ implicitly concluded that Plaintiff's non-exertional impairments do not limit his ability to perform the full range of light work.

However, there is an inconsistency in the ALJ's discussion of Plaintiff's depression, a non-exertional impairment. The ALJ reported at the beginning of his opinion that Plaintiff's complaints of depression "are not supported by the treatment records." (T 17) However, later in his decision, the ALJ mentioned that Plaintiff has a "severe impairment due to depression in that it results in more than slight mental restrictions." (T 27) (emphasis added) The ALJ next stated

---

[16] See, e.g., Walker v. Bowen, 826 F.2d at 1003 (pain and the inability to walk without an assistive device can be non-exertional impairments); Allen v. Sullivan, 880 F.2d at 1202 (mental impairments are non-exertional impairments); Rambo v. Heckler, 728 F.2d 1583, 1584 (11th Cir. 1984) (colon discomfort and recurrent episodes of diarrhea are non-exertional impairments).

[17] Plaintiff cites Allen v. Sullivan, 880 F.2d at 1202, in support of this proposition, claiming that vocational testimony is needed if a claimant's ability to work is even "slightly" reduced by non-exertional impairments (Dkt. 13 at 20). However, in Phillips v. Barnhart, 357 F.3d at 1243 n.14, the Eleventh Circuit held that a VE must testify when nonexertional limitations "significantly" limit basic work skills. In doing so, the Eleventh Circuit cited Allen v. Sullivan as an isolated case which "blur[s] the line between exertional limitations and nonexertional limitations, on the one hand, and a full range or unlimited types of work and wide range or significantly limiting basic work skills on the other"; thus muddling the issue of when the testimony of a VE is necessary. Id.

that Plaintiff's depression "results in no more than mild mental restrictions." (Id.) (emphasis added) The ALJ found that Plaintiff suffers from the severe impairments of HIV infection, DDD, myelopathy, peripheral neuropathy, and osteoarthritis. Depression was not listed as a severe impairment. (T 16)

The inconsistency in the ALJ's decision requires clarification. Remand is necessary for the Commissioner to clarify whether Plaintiff's depression is severe or not and, if severe, what residual functional capacity limitations exist. On remand, if the ALJ finds that Plaintiff suffers from non-exertional impairments, including depression, that significantly limit Plaintiff's ability to do a wide range of work at the light exertional level, then the use of the grids is improper and the testimony of a VE is necessary. See Walker v. Bowen, 826 F.2d at 1002-03. However, if the ALJ finds that Plaintiff's depression and other non-exertional impairments are not "severe" enough to significantly narrow the work Plaintiff can perform at the light exertional level, then use of the grids to determine Plaintiff's disability may be appropriate. See Allen v. Sullivan, 880 F.2d at 1202.

### III.

Remand is necessary to allow the Commissioner to clarify whether Plaintiff's depression is a "severe" impairment. On remand, the parties shall be afforded an opportunity to present additional evidence on the issues remaining for determination. The court expresses no view as to what the result should be on remand.

Accordingly and upon consideration, it is **ORDERED AND ADJUDGED:**

(1) the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further administrative proceedings consistent with the foregoing; and

(2) the Clerk of Court shall enter final judgment in favor of Plaintiff pursuant to 42 U.S.C. § 405(g) as this is a "sentence four remand" and close the file. Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993). The final judgment shall state that if Plaintiff ultimately prevails in this case upon remand to the Social Security Administration, any motion for attorneys' fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. See Bergen v. Comm'r of Soc. Sec., 454 F.3d 1273, 1278 n.2 (11th Cir. 2006).

**DONE and ORDERED** in Tampa, Florida on this 12th day of September, 2008.

_____
ELIZABETH A JENKINS
United States Magistrate Judge